IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-01212-WYD-BNB

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC., a Colorado Corporation,

    Plaintiff,

        v.

SDMS, INC., a California Corporation;
THOMAS P. ANDERSON, individually; and
KENNETH PECUS, individually,

    Defendants.
_____

SDMS, Inc.,
THOMAS P. ANDERSON, and
KENNETH PECUS,

    Counter-Claimants,

v.

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.,

    Counter-Defendant.

**ORDER**

I.    <u>INTRODUCTION</u>

    THIS MATTER came before the Court on a hearing on pending motions on November 15, 2007. The motions addressed at the hearing include both parties' Motions for Summary Judgment and Plaintiff's Motion to Strike Jury Demand. This Order addresses my ruling on these motions.

## II. FACTUAL BACKGROUND

This case arises from the claimed violation of a Franchise Agreement entered into between the parties. Rocky Mountain Chocolate Factory ["RMCF"] granted a franchise to Defendants to open a RMCF store in San Diego, California. RMCF claims that Defendants materially breached the Franchise Agreement (as well as a related standstill agreement) by depleting RMCF Factory Candy from their shelves without replacing it, selling a variety of non-authorized products, and refusing to make royalty and marketing payments.

After being given notice of the default, RMCF alleges that Defendants did not cure their breaches. Accordingly, RMCF sent a Notice of Termination dated October 11, 2006 terminating the Franchise Agreement. Notwithstanding this Notice, it is claimed that Defendants continued to operate their store as a purported RMCF store, using RMCF's marks and trade secrets. They did so until on or about December 21, 2006, after the Court granted RMCF's preliminary injunction motion and ordered Defendants to (1) cease their infringement of RMCF's marks and licensed methods, and (2) refrain from competing with RMCF within ten miles of the store.

RMCF asserts claims of trademark infringement and unfair competition under the Lanham Act, misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act, and breach of the Franchise Agreement. Defendants/Counter-Claimants assert eight Counterclaims alleging, among other things, that RMCF made material misrepresentations/omissions in a Uniform Franchise Offering Circular ("UFOC") that violated the California Franchise Investment Law. Defendants also claim fraud, fraud in

the inducement, that the Franchise Agreement is unconscionable, that termination of the franchise was improper under the California Corporate Code, and that RMCF breached the implied covenant of good faith and fair dealing.

III. ANALYSIS

    A. Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

    B. Analysis of Pending Motions

        1. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on the first, second and fourth claims. As to the Lanham Act claims (claims one and two), it is argued that these claims have become moot because the alleged activity occurred, at most, from October 11, 2006 (when Defendants received the Notice of Termination) to December 21, 2006 (the date

the alleged illegal activity ceased). The motion also argues that RMCF's fourth claim under the Colorado Uniform Trade Secrets Act is not ripe as it relies upon the occurrence of future events that will not occur or, if ever ripe, has become moot. Finally, it is argued that RMCF cannot rely on damages that occurred between October and December 2006 to defeat the motion because it did not timely disclose such damages and/or cannot show actual damages.

Defendants' Motion for Summary Judgment is granted in part and denied in part. It is granted as to any alleged future violations of the Lanham Act or the Colorado Uniform Trade Secrets Act based on the permanent injunctive relief that has issued in this case. It is denied as to the claims for past infringement and/or violations of the Lanham Act and Colorado Uniform Trade Secrets Act.

I first address whether RMCF failed to timely disclose its damages calculations as to these claims. While I find that RMCF did fail to timely disclose its calculations, I find that this failure was harmless. The Federal Rules state, "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1). The following factors are relevant to this determination: (1) the prejudice or surprise to the party against whom the testimony is offered, (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)..

In the case at hand, previous disclosures and the amended complaint showed that RMCF was seeking damages for both past and future violations of the Lanham Act and the Colorado Uniform Trade Secrets Act. Thus, these damages should not have come as a complete surprise to Defendants. Further, the trial had not yet been set and I find that there will be no disruption of the trial based on such disclosures. I also find no bad faith or willfulness on the part of RMCF. To cure any prejudice to Defendants, I will reopen discovery to January 18, 2008 and allow Defendants to take reasonable and appropriate discovery in connection with such damages. RMCF must pay Defendants' reasonable fees and costs associated with such discovery. Further, RMCF will be precluded from presenting expert testimony as to these damages at trial, since its financial expert did not provide any testimony in this area.

I next address Defendants' argument that RMCF cannot prevail on these claims based on the damages element. I find that RMCF has presented genuine issues of material fact that defeat summary judgment on this issue as well. Specifically, I find that there are genuine issues of material fact as to whether: (1) Defendants made profits during the period from October to December 2004; (2) RMCF can prove that it has actual damages at trial; and (3) damages should or should not be awarded to RMCF based on equitable principles.

      2.    <u>Plaintiff's Motion for Summary Judgment</u>

RMCF seeks summary judgment on its third claim for breach of contract as well as all of Defendants' counterclaims. I first deny the motion as moot as to the seventh

counterclaim for breach of contract since this claim was previously dismissed. I now turn to the other counterclaims and then address RMCF's breach of contract claim.

### a. Fraud Counterclaims

The fraud counterclaims (the first, second, fourth and sixth counterclaims) were briefed and argued together in connection with the summary judgment motion since they all claim fraud based on three alleged misrepresentations/omissions in RMCF's UFOC. RMCF's Motion for Summary Judgment is granted in part and denied in part as to these counterclaims.

Specifically, the motion is denied as to the first alleged misrepresentation regarding earnings. Defendants rely as the basis for this misrepresentation on RMCF's statement in the Notes to Item 19 of the UFOC that "We do not have access to nor knowledge of the expenses or costs incurred by each of the 169 franchised Stores." Defendants argue that this statement is false, asserting that RMCF not only maintains profit and loss statements for each of its corporate-owned retail stores, it also requires each franchisee to provide quarterly profit and loss statements by the very terms of its own franchise agreement. I find that there are genuine issues of material fact as to this alleged misrepresentation and whether it is false. I also find that there are genuine issues of material fact as to the materiality of this representation and/or whether Defendants reasonably relied on same.

I also reject RMCF's argument that Defendants/Counter-Claimants improperly changed the basis of this allegation. The counterclaim alleges as a material misrepresentation or omission that "the 'claimed earnings' of other RMCF franchises

included within RMCF's Offering Circular did not represent RMCF's knowledge with regards to the *actual* financial performance of such franchises." First Counter-Claim, ¶ 26, Second Counter-Claim, ¶ 31. I find that this allegation is broad enough to encompass the misrepresentation at issue.

RMCF's Motion for Summary Judgment is denied as moot as to the second misrepresentation regarding disclosure of transfers, closures or terminations of RMCF franchisees and/or that Defendants misrepresented the nature of previous franchisees' departure from the RMCF system. Defendants withdrew this claim at the hearing. RMCF's Motion for Summary Judgment is also denied as moot as to the additional representation in the fraud counterclaims (fourth and sixth counterclaims) that RMCF made misrepresentations regarding its cash flow and financial makeup (Amended Counter-Claims, ¶¶ 40, 49), as Defendants withdrew this claim.

Finally on the fraud counterclaims, I grant RMCF's Motion for Summary Judgment as to the third misrepresentation regarding competition in the marketplace. Defendants argue that RMCF was required to disclose all known market competition, and that it failed to disclose itself as a significant competitor to the RMCF franchisees through its substantial sales to third-party retailers. I find that summary judgment is appropriate since it is undisputed that RMCF disclosed in the UFOC at issue and in the Franchise Agreement that RMCF would sell its product to third party retailers.

### b. Third Counterclaim

I now turn to the third counterclaim, which asserts that the Franchise Agreement was improperly terminated in violation of § 20035 of the California Corporate Code. I

grant summary judgment on this claim. Cal. Corp. Code § 20020 provides that "no franchisor may terminate a franchise prior to the expiration of its terms, except for good cause." Good cause "shall include, but not be limited to, the failure of the franchisee to comply with any lawful requirement of the franchise agreement after being given notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure the failure." *Id.* Cal. Corp. Code § 20021 provides that a franchisor may lawfully terminate a franchise agreement immediately if "the franchisee fails to pay any franchise fees or other amounts due to the franchisor or its affiliate within five days after receiving written notice that such fees are overdue."

In this case, it is undisputed that Defendants violated terms of the Franchise Agreement, including (1) depleting the required RMCF candy from their shelves, selling competitors' products, and failing to make required payments. Under these undisputed facts, RMCF had good cause to terminate the Franchise Agreement. Consequently, there is no violation of the California Corporate Code. While Defendants question the motive or timing of RMCF as to their termination, these are not factors that are appropriately considered under the California Corporate Code, nor have Defendants shown that these factors provide any legal basis to argue that the termination was unlawful. I also find that summary judgment is appropriate on this claim as the relief that Defendants seek—damages—is not available under Cal. Corp. Code § 20035.

    c. <u>Fifth Counterclaim</u>

I also grant summary judgment on the fifth counterclaim seeking rescission of the Franchise Agreement on the basis that is unconscionable under § 4-2-302 of

Colorado's Commercial Code. I find that this statute, contained in Article 2 of the Commercial Code applicable to sales contracts, is inapplicable to the agreement at issue. No Colorado case has applied this section to a franchise agreement. Indeed, "Article 2 of the UCC has been applied to only a limited number of cases, all of which have involved simple sales of goods not including credit transactions." *Univex Intern., Inc. v. Orix Credit Alliance, Inc.*, 914 P.2d 1355, 1357 (Colo. 1996). Certainly the Franchise Agreement is not a contract involving simple sales of goods.

Defendants rely, however, on *Colorado Carpet Installation, Inc. v. Palermo*, 668 P.2d 1384 (Colo. 1983) as support for their argument that this statute should apply to the Franchise Agreement. In that case, the court held that a contract involving the purchase and installation of carpet which included labor (installation of the carpet) was a contract for the sale of goods and subject to the Uniform Commercial Code. While recognizing that the contract was a mixed contract (involving both the sale of goods and services/labor) the court held that "[t]he mere furnishing of some labor or service. . . should not determine the ultimate character of a contract for purposes of. . . the Uniform Commercial Code." *Id.* at 1389. "Rather, the controlling criterion should be the primary purpose of the contract-that is, whether the circumstances underlying the formation of the agreement and the performance reasonably expected of the parties demonstrates the primary purpose of the contract as the sale of goods or, in contrast, the sale of labor or service." *Id.*

I find that Defendants have not and cannot show that the primary purpose of the Franchise Agreement was the sale of RMCF's goods. Instead, the primary purpose of

the Agreement is the granting of the franchise, i.e., allowing and enabling Defendants to set up and operate a RMCF franchise and use its marks and products. While the Franchise Agreement also contemplated that Defendants would sell RMCF's products, the agreement primarily involves the granting of, development and operation of the franchise. Thus, the Commercial Code is inapplicable.

Even assuming that the Colorado Commercial Code applies to this claim, I find that Defendants have not shown that the Franchise Agreement is unconscionable. "In order to support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party." *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986). Relevant factors to consider include: "a standardized agreement executed by parties of unequal bargaining strength, . . . lack of opportunity to read or become familiar with the document before signing it, . . . use of fine print. . ., absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated, the terms of the contract, including substantive unfairness, . . . the relationship of the parties, including factors of assent, unfair surprise and notice, . . . and all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect." *Id.*

In the case at hand, while there was some inequality in bargaining power, the Defendants were not necessarily unsophisticated. Defendant Pecus is a real estate

agent/broker and admitted that he owns a successful real estate company with two offices in San Diego that employs approximately 80 employees. Pecus also owned two Powerhouse Gyms which were operated under a licensing agreement with a national company, and it appears Anderson had an interest in these gyms.

Further, both parties were represented by counsel. Indeed, Defendants had counsel and an accountant review the Franchise Agreement prior to signing it. The Franchise Agreement does not contain provisions in fine print that are objected to. Defendants were not able to negotiate any terms of the contract, but there is no evidence of coercion or duress in connection with the execution of the agreement.[1] It appears that, after having had notice and an opportunity to review and examine the document with legal counsel, Defendants chose to execute an agreement that turned out to be unfavorable. I find that is not sufficient to show that the contract was unconscionable.

### d. Eighth Counterclaim

Summary judgment is also granted as to the eighth counterclaim for breach of the covenant of good faith and fair dealing. Colorado law imposes a duty of good faith and fair dealing in every contract. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract." *Id.* "The duty of good faith and fair dealing may be relied upon

---

[1] Defendants also assert that they were not provided a copy of the Operations Manual. However, the Franchise Agreement clearly refers to that manual and tells franchisees that they must abide by it. Thus, Defendants were on notice of this and could have requested a copy.

'when the manner of performance under a specific contract term allows for discretion on the part of either party.'" *Id.* (quotation omitted).

In this case, I first note that the eighth counterclaim did not allege that RMCF breached any specific contract term that allowed for discretion. Instead, it alleged that "RMCF has breached this covenant in that it acted in bad faith to frustrate the benefits Counter-Claimants were to receive under the RMCF Franchise Agreement." I agree with RMCF that Defendants now appear to be changing their allegation to something not pled in the counterclaim. This alone may constitute a ground for granting summary judgment.

I also find that summary judgment is appropriate on the merits. Defendants assert that RMCF breached the covenant because it treated Defendants differently than other franchisees by exercising its contractual right to terminate the agreement and purchase Defendants' assets, when it had not done so as to other franchisees. However, the implied covenant of good faith and fair dealing may not be used to invalidate contractual terms that the parties negotiated and agreed on, including a right to terminate the contract. *See Grossman v. Columbine Medical Center*, 12 P.3d 269, 271 (Colo. 2000) ("the termination clause expressly sets forth the right of both parties to terminate the contract for any reason. Hence the physician cannot rely on the implied duty of good faith and fair dealing to circumvent terms for which he expressly bargained"); *Soderlun v. Public Service Co.*, 944 P.2d 616, 623 (Colo. Ct. App. 1997) ("the covenant of good faith and fair dealing . . . does not inject new substantive terms into a contract or change its existing terms. . . . Such a covenant, therefore, cannot limit

an employer's right to discharge without cause . . . ."); *see also Salt Lake Tribune Publishing Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1103-04 (10th Cir. 2003).

### e. Breach of Contract Claim

Finally, I deny RMCF's Motion for Summary Judgment on RMCF's breach of contract claim. While I find that Defendants did not argue or present any genuine issues of material fact as to their liability on this claim, their fraud in the inducement counterclaim remains in the case. If Defendants were to prevail on this counterclaim, the contract could be rescinded. *See Crawford Rehabilitation Servs., Inc. v. Weissman*, 938 P.2d 540, 547 (Colo. 1997) ("A party that has been fraudulently induced to enter into a contract may rescind the contract to restore the status quo") (citing Restatement (Second) of Contracts § 164 (1981)).

### 3. Plaintiff's Motion to Strike Jury Demand

This motion argues that the jury demand of Defendants should be stricken. I grant this motion based on both of RMCF's arguments. First, I find that Defendants knowingly and expressly waived their right to a jury under Section 22.1 of the Franchise Agreement which states, "The Franchisor, the Franchisor Affiliates, the Franchisee and the Franchisee Affiliates each waive their rights to a trial by jury." (Amended Compl., Ex. A, § 22.1). Such an agreement is neither illegal nor contrary to public policy. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988). Indeed, waivers in franchise agreements have been upheld by a number of courts.[2]

---

[2] *See Bakrac, Inc. v. Villager Franchise Systems, Inc.*, No. 03-16197, 2006 WL 41282, at *3 (11th Cir. 2006); *Postnet Intern. Franchise Corp. v. Amercis Int'l, Inc.*, No. 06-cv-00125-PSF, 2006 WL 1775599 (D. Colo. 2006); *Silver v. JTH Tax, Inc.*, No. Civ.A. 2:05CV126, 2005 WL 1668060, at *7

Defendants argue, however, that the waiver should be set aside because it was not knowing, voluntary and informed. The Tenth Circuit has indicated that cases invalidating jury waiver provisions have relied on facts such as inconspicuous fine print or a gross disparity in bargaining power. *Telum*, 859 F.2d at 837; *see also Phoenix Leasing, Inc. v. Sure Broadcasting, Inc.*, 843 F. Supp. 1379, 1384 (D. Nev. 1994), *aff'd*, 89 F.3d 846 (9th Cir. 1996).

Here, while Defendants argue that this clause was in fine print and was inconspicuous, I disagree. It was in normal print consistent with other clauses in the contract. *See Postnet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, No. 06-cv-00125-PSF, 2006 WL 1775599, at * 2 (D. Colo. 2006) (rejecting the suggestion that a term is not conspicuous merely because it is contained on the next to last page of the contract, is not in distinct typeface, and does not have a particularized caption summarizing its content).

Further, while there is an argument that there is unequal bargaining power between RMCF and Defendants, I find that there is not a gross disparity as required to invalidate such a provision. *See Telum*, 859 F.2d at 837. While RMCF may have been a larger more sophisticated business, Defendant Pecus also appears to have been relatively sophisticated, having run other businesses (including a large real estate company in San Diego and two licensed gyms). Also, Anderson and Pecus consulted with counsel before signing the agreement. While there was not the opportunity to

---

(E.D.Va. June 21, 2005); *Smith-Johnson Motor Corp. v. Hoffman Motors Corp.*, 411 F. Supp. 670, 677 (D. Va. 1975)

negotiate, there was certainly no compulsion in connection with Defendants' signing of the agreement. *See Postnet*, 2006 WL 1775599, at *3 (waiver provision enforced where a party was free to reject the franchise agreement and to decline to become a franchisee and holding that "[a] contract clause is not unenforceable merely because one party to the contract insists on it"); *Bakrac v. Villager Franchise Sys., Inc.*, 2006 WL 41282, at *3 (11th Cir. 2006) (enforcing jury waiver provision and noting that "[t]here is no indication that [the franchisee] was under duress or that [the franchisor] pressured him to sign the Franchise Agreement").

As to Defendants' arguments that they were fraudulently induced to enter into the Franchise Agreement, the Tenth Circuit holds that fraud in the inducement must be shown specifically as to the jury waiver provision. *Telum*, 859 F.2d at 837-38. A general argument that the agreement was fraudulently induced or fraudulent, as here, does not invalidate the jury waiver provision. *Id.*

Finally, even if the waiver provision is not valid under the Franchise Agreement, I find that Defendants waived their right to a jury trial because they did not make a demand as required by F<small>ED</small>. R. C<small>IV</small>. P. 38. Rule 38(b) states, "Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d)." Rule 38(d) further states that "The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury."

None of the pleadings filed by Defendants in this case, including the answers or the counter-claims, made a jury demand. The only place that Defendants referenced a jury demand was in the proposed scheduling order submitted by the parties wherein in response to the question about the anticipated length of trial and whether trial is to the court or jury Defendants stated that they "anticipate an 8 day JURY trial." I find that this statement, even if timely under Rule 38, is not sufficient to meet the Rule's requirement for a jury demand.

IV.     CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** consistent with this Order. It is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** consistent with this Order. It is

FURTHER ORDERED that Plaintiff's Motion to Strike Jury Demand is **GRANTED**. It is

FURTHER ORDERED that a three (3) day trial to the Court is set to commence on **Monday, August 18, 2008.** A Final Trial Preparation Conference is set for **Wednesday, August 6, 2008, at 10:00 a.m.** Finally, it is

ORDERED that the parties shall file proposed amendments to the Pretrial Order based on the Court's rulings today on or before **February 1, 2008.**

Dated: November 30, 2007

                BY THE COURT:

                <u>s/ Wiley Y. Daniel</u>
                Wiley Y. Daniel
                U. S. District Judge