IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 06-cv-01212-PAB-BNB

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.,

      Plaintiff,

v.

SDMS, INC.,
THOMAS P. ANDERSON and
KENNETH PECUS,

      Defendants.
_____

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
_____

The Court presided over a trial to court in this matter from February 23-25, 2009.

Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, the Court makes the

following findings of fact, by a preponderance of the evidence, and the following

conclusions of law:

## I. FINDINGS OF FACT

Rocky Mountain Chocolate Factory ("RMCF") is a Colorado corporation with its

principal place of business in Durango, Colorado. RMCF grants the right to others,

pursuant to written franchise agreements, to develop and operate Rocky Mountain

Chocolate Factory stores using RMCF's trademarks and proprietary methods of doing

business.

SDMS, Inc. ("SDMS") is a California corporation with its principal place of business in San Diego, California. Thomas P. Anderson ("Anderson") is an adult who resides in California. Kenneth Pecus ("Pecus") is an adult who resides in California.

Anderson is president and a 50% owner of SDMS. He had previously worked as a teacher and a sales representative. He had no prior experience in retail sales. Pecus is a 50% owner of SDMS. Pecus is the co-owner of a real estate company that employs approximately 80 realtors in two offices in San Diego and is also the owner of 20 rental units. From 2000 to 2006, Pecus owned two Powerhouse Gyms which were operated under an agreement with a national licensing company.

In 2003, Anderson decided to seek out an opportunity to operate a chocolate store. He picked up a franchise pamphlet at a RMCF store in La Jolla, California. After discussing the matter with Pecus and reviewing RMCF's website, Anderson filled out an application to become a franchisee. RMCF approved defendants' application.

A. <u>Signing of Franchise Agreement</u>

RMCF sent its Uniform Franchise Offering Circular ("UFOC") to defendants on June 19, 2003, approximately two months before they executed the Franchise Agreement. A copy of the Franchise Agreement that defendants signed was included with the UFOC as Exhibit B. "Item 19" of the UFOC, dated June 16, 2003, disclosed the gross sales figures for the top seventy-five percent (75%) of RMCF's then-existing franchised store locations. Note 5 to the "Explanatory Notes" for item 19 of the UFOC states: "We do not have access to nor knowledge of the expenses or costs incurred by each of the 169 franchised Stores. The above Gross Retail Sales figures may not necessarily be predictive of any given Store's profitability."

2

The UFOC advised franchisee prospects that their due diligence should include contacting former and current RMCF franchisees with respect to all questions and, particularly, to investigate the costs and expenses they were likely to incur at their store.

A list of current franchisees, with addresses and phone numbers, was included in Exhibit C of the UFOC. A list of all franchise owners who had left the system in the previous year, also with addresses and phone numbers, was included in Exhibit D of the UFOC.

On August 14, 2003, after receiving a copy of the UFOC, Pecus sent an e-mail to RMCF's Franchise Sales Representative, Kraig Carlson, stating, in pertinent part, "Would REALLY like to see a couple months income and expense (especially expense) statements from ANY store. Can blank out anything, names, addresses, whatever. We are creating our monthly budget projections and would really like a place to start from…we figure you must have something from the stores." RMCF informed Pecus it did not provide such information.

Prior to signing Franchise Agreement, Anderson visited or contacted approximately four or five then-existing RMCF stores, including those located in La Jolla, Ontario Mills, and San Francisco. Only the La Jolla store was located in a similar retail environment as the Gaslamp district of San Diego, California. Anderson asked representatives from these stores for their financial information, including their operating costs and expenses. On each occasion, the franchisees declined to provide their financial information to Anderson.

On August 29, 2003, SDMS, Inc., Anderson and Pecus (together "defendants") signed a franchise agreement (the "Franchise Agreement") with RMCF with an effective

date of August 25, 2003.  The Franchise Agreement had a term of ten years.  The

defendants' RMCF store was located in the Gaslamp district of downtown San Diego,

California.  Defendants reviewed the Franchise Agreement before they signed it.

Defendants also had an attorney review the Franchise Agreement and consulted with

that attorney before signing the Franchise Agreement.

Anderson and Pecus signed a document called a "Closing Acknowledgement" in

connection with the Franchise Agreement on or about August 12, 2003 in which they

acknowledged, in pertinent part, that:

1.  I have not received any information, either oral or written, regarding
    the sales, revenues, earnings, income or profits of ROCKY
    MOUNTAIN CHOCOLATE FACTORY Stores from any officer,
    employee, agent or sales representative of RMCF, except as may be
    set forth in Item 19 of the Uniform Franchise Offering Circular.

2.  I have not received any assurances, promises or predictions of how
    well my ROCKY MOUNTAIN CHOCOLATE FACTORY Store will
    perform financially from any officer, employee, agent or sales
    representative of RMCF.

4.  I acknowledge that RMCF will provide guidelines for a suitable site
    for my ROCKY MOUNTAIN CHOCOLATE FACTORY Store, but I
    understand that I am responsible for the final decision regarding the
    selection of a suitable site.

5.  I am not relying on any promises of RMCF which are not contained in
    the ROCKY MOUNTAIN CHOCOLATE FACTORY Franchise
    Agreement.

7.  I understand that my investment in a ROCKY MOUNTAIN
    CHOCOLATE FACTORY Store contains substantial business risks
    and that there is no guarantee that it will be profitable.

10. I acknowledge that the success of my ROCKY MOUNTAIN
    CHOCOLATE FACTORY Store depends in large part upon my ability
    as an independent business person and my active participation, or
    the active participation of my General Manager, in the day to day
    operation of the Store.

4

The Franchise Agreement contained the following language regarding the duty of franchisees to provide financial information to RMCF:

15.1 **Franchisee Reports**.

The Franchisee shall establish and maintain at its own expense a bookkeeping and accounting system which conforms to the specifications which the Franchisor may prescribe from time to time, including the Franchisor's current "Standard Code of Accounts" as described in the Operations Manual. The Franchisee shall supply to the Franchisor in a manner and form as the Franchisor may from time to time reasonably require, including:

a. Monthly summary reports, in a form as may be prescribed by the Franchisor, mailed to the Franchisor postmarked no later than the 15th day of the month containing information relative to the previous month's operations; and

b. Quarterly financial statements, prepared in accordance with generally accepted accounting principals ("GAAP"), and consisting of a profit and loss statement and balance sheet for the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, mailed to the Franchisor postmarked no later than the 15th day following the end of the calendar quarter, based on operating results of the prior quarter, which shall be submitted in a form approved by the Franchisor and shall be certified by the Franchisee to be correct.
…

15.6 **Failure to Comply with Reporting Requirements**.

If the Franchisee fails to prepare and submit any statement or report as required under this Article 15, then the Franchisor shall have the right to treat the Franchisee's failure as good cause for termination of this Agreement.

Most RMCF franchisees do not comply with the financial reporting provisions of the Franchise Agreement, and RMCF does not enforce this contractual provision. Between June and August 2003, RMCF did not possess financial statements from each franchised store.

Regarding royalties, the Franchise Agreement stated that:

11.1. Monthly Royalty.  The Franchisee agrees to pay to the Franchisor a monthly royalty ("Royalty") equal to 5% of its Gross Retail Sales generated from or through its ROCKY MOUNTAIN CHOCOLATE FACTORY Store . . .

12.3. Marketing and Promotion Fee.  The Franchisee shall pay to the Franchisor, in addition to Royalties, a fee of 1% of the total amount of the Franchisee's Gross Retail Sales ("Marketing and Promotion Fee") . . .

Defendants agreed in the Franchise Agreement to comply with all operational requirements, including purchasing certain RMCF products from RMCF ("Factory Candy") for resale to customers and offering only approved products for sale.

The parties agreed that, in the event the franchisee defaulted and RMCF terminated the Franchise Agreement based on that default, RMCF would be entitled to the present value of the lost future royalties resulting from that termination:

18.3. Franchisor's Remedies.

a.  Failure to Pay. . . . Additionally, in the event this Agreement is terminated by the Franchisor prior to its expiration as set forth in Sections 18.1 or 18.3 above, the Franchisee acknowledges and agrees that in addition to all other available remedies, the Franchisor shall have the right to recover lost future Royalties during any period in which the Franchisee fails to pay such Royalties through and including the remainder of the then current term of this Agreement.

The Franchise Agreement also stated that, in the event of litigation between the parties, the prevailing party was entitled to its attorneys' fees:

22.8. Attorneys' Fees.  In the event of any dispute between the parties to this Agreement, including any dispute involving an officer, director, employee or managing agent of a party to this Agreement, in addition to all other remedies, the non-prevailing party will pay the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party in any legal action, arbitration or other proceeding as a result of such dispute.

### B.  Breach of Franchise Agreement

Defendants operated their RMCF Store between February 11, 2004 and September 1, 2007.  After Anderson and Pecus' execution of the Franchise Agreement, Anderson became the primary person within SDMS, Inc. responsible for the day-to-day operations of their RMCF store.  The defendants' store lost money almost every month that it was in operation.

Defendants did not comply with certain operational covenants of the Franchise Agreement during the first 26 months of operations:

a. In the summer of 2004, defendants duplicated a pecan log by making it in the store even though it is required to be bought from the RMCF factory;

b. In the summer of 2004, defendants modified RMCF's recipe for fudge (a RMCF signature item) they were selling at their RMCF store by adding cream, which RMCF disapproved of; and

c. In March or April 2006, defendants sold non-approved product by making a line of molded chocolates that are not consistent with the type of chocolate offered at RMCF stores.

On May 11, 2006, defendants informed RMCF via email and certified mail that due to financial reasons (the economic conditions at that location, the cost structure of the RMCF products, and the size of the store) defendants were unable to continue being a RMCF store.  Subsequent emails from Anderson to RMCF on that day indicated that defendants intended to remove the RMCF signage and to begin operating a competing chocolate store called "The Gaslamp Chocolatier" beginning June 1, 2006.  A letter from Anderson to defendants' landlord, SD Malkin Properties, indicated that defendants did not know how RMCF would respond to this notice.

On or about May 26, 2006, RMCF filed suit in state district court in La Plata County, Colorado, asserting claims of declaratory relief and anticipatory breach of contract and seeking a temporary restraining order preventing defendants from violating the non-compete clause and from using RMCF's trade secrets.  The parties entered into negotiations to resolve their dispute.  On May 26, 2006, the parties agreed that while they negotiated: (1) defendants would continue as RMCF franchisees; (2) both parties would fully comply with the Franchise Agreement; and (3) they would stay the lawsuit RMCF had filed.

Between May and September 2006, defendants stopped paying royalties to RMCF and no longer ordered RMCF's Factory Candy.  Defendants sold unauthorized products, including products from RMCF's competitors, from their store in August 2006.

On September 6, 2006, RMCF sent defendants a Notice of Default, demanding that defendants cure their defaults within the time frame set forth in the Franchise Agreement (10 days for the monetary default and 30 days for the operational defaults).  By October 11, 2006, defendants had not cured the defaults referred to in the September 6, 2006 RMCF letter.  RMCF sent defendants a Notice of Termination dated October 11, 2006 terminating the Franchise Agreement.

In the fall of 2006, RMCF offered to buy the assets of defendants' RMCF store for $65,000.  Defendants refused this offer.  Defendants sold the store's assets to a third party for $20,376 in the fall of 2007.

Defendants continued to operate their store as a RMCF store using RMCF's trademarks, trade dress, and trade secrets until this Court entered a preliminary injunction on December 8, 2006 prohibiting them from doing so.

### C. **Damages**

Defendants owe RMCF $33,109 in past due royalties and interest.

RMCF's calculation of its lost future profits and royalties, as presented through the testimony of Bryan Merryman, the chief operating officer for RMCF and a former Certified Public Accountant, used a Weighted Average Cost of Capital (WACC) discount rate to obtain the Net Present Value of the payments.

RMCF calculated its WACC at 15.65%, using the Capital Asset Pricing Model (CAPM). The formula for CAPM is the Risk Free Rate of Return, plus the equity risk premium multiplied by the Beta of the security, plus the micro-cap risk premium. RMCF based the Risk Free Rate of Return on the thirty year Treasury bond on March 15, 2007 (4.53%). Expected equity and micro-cap risk premiums were based on the Ibbotson Risk Premia Over Time Report for 2006. Ibbotson reported the equity risk premium at 7.1% and the micro-cap risk premium at 3.95%. RMCF's Beta value on March 15, 2007 was 1.01. The cost of equity, given these inputs, was calculated at: 4.53+(7.1%*1.01)+3.95%=15.65%. WACC weights the cost of debt and cost of equity in calculating the cost of capital. Because RMCF was free of long term debt, at the time of analysis, the cost of equity is also the WACC.

Under the terms of the Franchise Agreement, RMCF received royalty and marketing fee payments, paid monthly and adjusted quarterly, based on a set percentage of defendants' gross sales and adjusted gross sales at their store for that month. The royalty and marketing fee payment each month was based upon defendants' sales of product that month. RMCF has reported sales figures from

defendants' store through September 2006. RMCF's lost future damages claim is calculated from October 2006.

For the months October 2006 though the end of August 2013, RMCF projected the royalty and marketing fee payments based on the historical performance (which includes annualized gross sales for 2006). RMCF based its projections on $380,000 in gross sales in 2006 had defendants remained a RMCF franchise through that time. The calculation also included a sales growth rate of 3% based on RMCF's experience.

RMCF projected the payments that defendants would have made for (1) October, November, and December 2006, (2) the years 2007-2012, and (3) the first eight months of 2013, using a royalty rate of 6%.

Applying the 15.65% discount rate to the projected royalty and marketing payments due after December 2006 and adding the resulting figure to the projected royalty and marketing fees from October through December 2006 results in a total projected royalty and marketing fee amount of $108,617.

Under the Franchise Agreement, defendants were required to purchase RMCF Factory Candy from RMCF. As discussed below, the projected "Factory Margin" represents the amount of profit that RMCF would have made on sales of Factory Candy to RMCF had the Franchise Agreement not been terminated. The last month in which defendants purchased RMCF product from RMCF was April 2006. Therefore, the future lost profits on these sales includes the period of May 2006 though August 25, 2013.

RMCF's projections are based on defendants' actual 2005 purchases, which equaled $51,133 in sales (the Factory Margin on these purchases was $18,290),

annualized to determine the total that defendants would have purchased in 2006 had they remained a RMCF franchise through that time (6,828 pounds of RMCF product). RMCF also applied a growth rate of 3%.

RMCF projected the payments reflecting the Factory Margin amount that they would have received from defendants for (1) May, June, July, August, September, October, November, and December 2006, (2) the years 2007-2012, and (3) the first eight months of 2013.

Applying the 15.65% discount rate to the Factory Margin amounts that RMCF would have received after October 2006, and adding the resulting figure to the Factory Margin amounts from May through December 2006, results in a total projected Factory Margin amount of $93,091.

Adding the total projected royalty and marketing payments ($108,617) and the projected Factory Margin amount ($93,091) results in a total lost franchise payment amount of $201,708.

Adding the actual royalty and marketing fees due based on reported sales ($15,945), the total lost franchise payment amount ($201,708), the interest on royalty and marketing payments ($11,966), and the interest on Factory Margin amounts ($5,198), results in a total of $234,817.

## II. CONCLUSIONS OF LAW

The Court has jurisdiction over the parties to this action. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b)(2).

In assessing the credibility of each witness who testified at trial, the Court has considered all facts and circumstances shown by the evidence that affect the credibility of each witness, including his or her means of knowledge, relationship to either side of the case, and consistency with other evidence.

## A.  RMCF's Breach of Contract Claim

To recover for breach of contract under Colorado law, RMCF must prove the following elements: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

On August 25, 2003, RMCF, Anderson, Pecus, and SDMS, Inc. entered into the Franchise Agreement for a RMCF franchise location in the Gaslamp district in San Diego, California.  Consistent with the Court's prior rulings, the Franchise Agreement is a valid contract.

Section 22.1 of the Franchise Agreement provides that Colorado law shall govern the interpretation of that contract.  At trial, with one exception relating to California statutory claims addressed below, the parties relied on Colorado law for their respective claims.  The Court will therefore apply Colorado law.  *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

The evidence presented by the parties demonstrates that RMCF substantially performed that contract.  Defendants have not challenged this conclusion.

### 1. Breach

Defendants' three instances of noncompliance with the Franchise Agreement (involving the pecan log, the fudge recipe, and the molded candy) between the summer of 2004 and the spring of 2006 do not constitute material breaches of the Franchise Agreement, and RMCF did not treat them as such.

Defendants' conduct in failing to pay royalties to RMCF between May and October 2006 constitutes a material breach of the Franchise Agreement. Sections 11.1 and 11.3 of the Franchise Agreement require that the franchisee make royalty payments to RMCF on a monthly basis by mailing such payments no later than the fifteenth day of each month. Failure to make such royalty payments within ten days of receiving notice of overdue amounts constitutes a default under Section 18.1(c) of the Franchise Agreement. This default, in turn, provides RMCF with the right to terminate the Franchise Agreement under Section 18.1. Defendants have never paid RMCF the outstanding royalty amounts.

Defendants' failure to purchase Factory Candy and their display and sale of products produced by RMCF's competitors violated Sections 10.1(e) and 13.4 of the Franchise Agreement and constituted material breaches. Under Section 18.2(a), RMCF was entitled to terminate the Franchise Agreement for defendants' failure to conform to RMCF's operational standards if thirty days had elapsed since defendants' were notified of their operational defaults and had failed to cure those defaults.

Defendants' failure to pay royalties, failure to purchase Factory Candy, and sales of competitor's products justified RMCF's termination of the Franchise Agreement with the defendants.

### 2. Damages

"Generally, in a breach of contract action, a plaintiff may recover the amount of damages necessary to place him in the same position he would have occupied had the breach not occurred." *Smith v. Farmers Ins. Exchange*, 9 P.3d 335, 337 (Colo. 2000).

According to RMCF's business records and its calculations, the outstanding royalty balance owed by defendants for the time period from May 2006 until their termination as RMCF franchisees is $15,945. Based upon an interest rate of 18% contained in Section 11.3 of the Franchise Agreement, RMCF calculates that interest in the amount of $11,966 has accrued on this outstanding balance. RMCF also claims actual damages in the amount of $5,198 as interest on Factory Margin, that is, interest on sales of Factory Candy to defendants that would have occurred between May and September 2006 if not for defendants' breach. Defendants did not contest these amounts at trial. The Court thus concludes that RMCF has established actual damages in the amount of $33,109.

RMCF seeks future damages totaling $201,708. This sum is comprised of future royalty payments of $108,617 and future sales of Factory Candy in the amount of $93,091. Mr. Merryman, who RMCF tendered at trial as an expert witness with respect to future damages, testified that he calculated future damages in March 2007. When making this calculation, Mr. Merryman applied a discount factor that integrates a number of variables – including assumptions based on defendants' sales history and industry standard measures of equity risk premiums – in order to estimate the present value of the future royalty payments and Factory Candy sales.

In future damages cases, Colorado courts "have adopted a rule requiring a plaintiff to provide the trier of fact with (1) proof of the fact that damages will accrue in the future, and (2) sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss." *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1382 (Colo. 1993). Future royalties are recoverable in certain circumstances under Colorado law. Specifically, "[w]here there is sufficient reliable evidence royalties would have accrued but for defendant's breach, the [factfinder] should be permitted to assess the amount of the lost royalties from the best evidence the nature of the case allows." *Acoustic Marketing Research, Inc. v. Technics, LLC*, 198 P.3d 96, 99 (Colo. 2008). Thus, to establish a right to future royalties, and to future damages generally, a plaintiff "must establish, by a preponderance of the evidence, the fact of damage and a reasonable basis for computation of that damage." *Id.*

In *Technics*, the Colorado Supreme Court held that future royalties, like all future damages, are subject to the "rule of certainty." *Id.* at 98. The court explicitly declined to hold that "future royalties raise special concerns requiring departure from the general rule for future damages." *Id.* The rule of certainty requires that, in addition to proving the fact of future damages, the plaintiff must "submit substantial evidence, which together with reasonable inferences to be drawn therefrom provides a reasonable basis for computation of the damage." *Pomeranz*, 843 P.2d at 1383.

Inherent in the requirement that future damage awards be subject to a reasonable basis for calculation is the principle that where future lost profits are claimed, only net profits may be awarded; gross profits are not a proper basis for

damages.  *See Lee v. Durango Music*, 355 P.2d 1083, 1087 (Colo. 1960); *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1227 (Colo. App. 2002).  Absent some evidence revealing the expenses of operation, it is not possible to ascertain net profits with certainty.  *Prof'l Rodeo Cowboys Ass'n, Inc. v. Wilch Smith & Brock*, 589 P.2d 510, 513-14 (Colo. App. 1978).  Therefore, if a plaintiff fails to proffer evidence that allows determination of a net amount of future profits, then such damages are speculative and cannot be awarded.  *See id.* at 514; *see also Chavez Props.-Airport Parking Albuquerque, LP v. Lorentzen*, 204 F. App'x 745, 756 (10th Cir. Nov. 7, 2006) (unpublished) ("In calculating lost profits, evidence of gross profits alone has no evidentiary value and failure to present evidence of expenses is detrimental to the claim.").

RMCF's alleged future damages are essentially in the nature of lost profits.  As illustrated above, RMCF claims both profits it would have made in the future from sales of Factory Candy to defendants as well as future royalty payments it would have received over the term of the Franchise Agreement.  The Colorado Court of Appeals in the *Technics* case referred to future royalties as a form of lost profits.  *Technics, LLC v. Acoustic Marketing Research Inc.*, 179 P.3d 123, 126 (Colo. App. 2007) ("[W]hen damages are sought for future lost profits, here lost royalties, . . . ."), *aff'd,* 198 P.3d 96 (Colo. 2008).  Because RMCF's future damages claims are in the nature of lost profits, RMCF was required to present evidence from which this Court could determine its net future profits.

A number of courts have addressed the calculation of a franchisor's claim for future royalties following breach of a franchise agreement and held that such future damages must be a net, rather than a gross, amount. *See*, *e.g.*, *Burger King Corp. v. Barnes*, 1 F. Supp. 2d 1367, 1370 (S.D. Fla. 1998) (holding that franchisor must deduct expenses from expected future royalties to prove entitlement to "lost profits"); *In re Mid-America Corp.*, 159 B.R. 48, 55 (M.D. Fla. Bankr. 1993) (holding that even though franchisee caused franchisor damages by abandoning its franchises, franchisor's failure to present evidence of its expenses attributable to individual franchises rendered franchisor's claim for future royalties speculative)*; cf. Postal Instant Press, Inc. v. Sealy*, 51 Cal. Rptr. 2d 365, 372 n.5 (Cal. Ct. App. 1996) (discussing the "difficulties in arriving at an estimate of *net* 'lost future royalties'") (emphasis in original).

The UFOC that RMCF provided to defendants includes certain financial statements of RMCF. Among other things, these financial statements reveal that RMCF incurs costs associated with their franchise system, which varied from year to year for RMCF's fiscal years 2001 through 2003. Moreover, the job duties of many of the RMCF employees who testified at trial relate to support of the franchise system. However, RMCF presented no evidence at trial showing the relationship between such franchise costs and RMCF's business relationship with defendants' franchise.

Without any evidence regarding these operational expenses, the Court is left to speculate as to the amount of RMCF's net future lost profits, in the form of future royalties or otherwise. Because RMCF adduced no evidence of its operating expenses attributable to doing business with defendants, the Court concludes that RMCF failed to

carry its burden at trial to submit substantial evidence from which its claimed future damages may be calculated with reasonable certainty.

Although the foregoing conclusion precludes an award of future damages to RMCF, it is not clear that RMCF would be entitled to future damages even if it had provided evidence sufficient for a reasonably certain calculation. Notably, the Colorado Supreme Court in *Technics* summarized existing case law on recovery of future royalties by a franchisor as follows: "courts have typically allowed recovery of lost royalties when a franchisee terminates or repudiates a franchise agreement, as long as the franchisor can demonstrate that, but for the breach, the business would have enjoyed continued success." *Technics*, 198 P.3d at 98. At trial, defendants cast doubt on their continued viability as a franchisee had the Franchise Agreement not been terminated by pointing to their persistent operating losses, the recent closure of a number of other RMCF franchises in California, and current economic conditions that have detrimentally impacted retail businesses.

Section 22.8 of the Franchise Agreement entitles the "prevailing party" to "all costs and expenses," including "reasonable attorney's fees." RMCF is the prevailing party within the meaning of Section 22.8 and is therefore entitled to have defendants pay its non-taxable costs and reasonable attorney's fees incurred because of this case. *See Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 332 (Colo. 1994); *Bedard v. Martin*, 100 P.3d 584, 593 (Colo. App. 2004).

**B. Defendants' Counterclaims**

On November 30, 2007 [Doc. No. 177], the Court issued a written order on RMCF's Motion for Summary Judgment, in which it permitted defendants' fraud counterclaims to go forward only with respect to the first alleged misrepresentation. Consequently, the only remaining basis for defendants' counterclaims is RMCF's statement in the UFOC that it did "not have access to nor knowledge of the expenses or costs incurred by each of the 169 franchised Stores."

### 1. Common Law Fraud

Defendants bring their counterclaims for fraud in the inducement (Fourth Counterclaim) and fraud (Sixth Counterclaim) under the common law of Colorado. Under Colorado law, to prevail on their fraud claims, defendants have to prove that: "(1) a fraudulent misrepresentation of material fact was made by [RMCF]; (2) [defendants] relied on the misrepresentations; (3) [defendants] have the right to rely on, or were justified in relying on, the misrepresentation; and (4) the reliance resulted in damages. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994). If the defendants had "access to information that was equally available to both parties and would have led to the true facts," then defendants had no right to rely upon the false representation. *Id.*; *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo. App. 2000).

Defendants reviewed the UFOC and the franchise agreement attached to it before signing the Franchise Agreement. The franchise agreement to the UFOC disclosed RMCF's right under Section 15.2 thereof to obtain financial statements from the franchisee.

Because defendants were on notice of RMCF's contractual right to obtain financial statements from defendants pursuant to the Franchise Agreement at the same time they read the statement in the UFOC regarding RMCF's access to the expenses or costs incurred by each of the listed franchised stores, they could not have justifiably relied to their detriment on the statement that RMCF did not have access to the expenses or costs incurred by each franchised store. Item 1 of the UFOC provided to defendants explicitly states that "[y]ou must sign *our* Franchise Agreement . . . , (Exhibit B to this Offering Circular)." (italics added). The defendants contended at trial that their receipt of the franchise agreement attached to the UFOC gave them knowledge only that RMCF would have a right to defendants' financial statements, as opposed to knowledge that RMCF had a right to access such information as to each of the 169 franchisees. Although defendants understood, due to changes in RMCF's royalty structure, that not all RMCF franchisees signed the same franchise agreement, the Court finds that defendants also understood that the franchise agreement attached to the UFOC was a form agreement provided to any prospective franchisee. It was not reasonable to assume that a difference in the royalty structure of the franchise agreement would have caused a change in the requirement of franchisees to provide financial information. Moreover, because the defendants actually had information that conflicted with the UFOC's disclosure in Note 5 to Item 19 by virtue of the franchise agreement attached thereto, they had access to information which, if pursued by further inquiry, would have led to the true facts. *See M.D.C./Wood, Inc.*, 866 P.2d at 1382.

Given defendants' knowledge that RMCF had the right to obtain financial statements from their prospective franchise, defendants could not have justifiably relied

20

on the statement implying the contrary in Note 5 to Item 19 of the UFOC.  Defendants'

reliance on that statement is further undercut by the ample disclaimers in the UFOC.

The primary text of Item 19 states that:

> THE EARNINGS FIGURES DO NOT REFLECT THE COSTS OF SALES
> OR OPERATING EXPENSES THAT MUST BE DEDUCTED FROM THE
> GROSS REVENUE OR GROSS SALES FIGURES TO OBTAIN YOUR
> NET INCOME OR PROFIT.  THE BEST SOURCE OF COST AND
> EXPENSE DATA WILL EVENTUALLY BE FROM FRANCHISEES AND
> FORMER FRANCHISEES.

Item 19 further provides:

> WE DO NOT FURNISH OR MAKE, OR AUTHORIZE OUR SALES
> PERSONNEL TO FURNISH OR MAKE, ANY ORAL OR WRITTEN
> INFORMATION CONCERNING THE ACTUAL, AVERAGE, PROJECTED,
> FORECASTED OR POTENTIAL SALE, COSTS, INCOME OR PROFITS
> OF A FRANCHISE OR PROSPECTS OR CHANCES OF SUCCESS
> THAT ANY FRANCHISEE CAN EXPECT OR THAT PRESENT OR PAST
> FRANCHISEES HAVE HAD, OTHER THAN AS SET FORTH IN THIS
> ITEM.

These disclaimers make clear RMCF's policy of not disclosing to prospective

franchisees any cost or expense information regarding any of its existing franchisees.

Even if RMCF had access to such information by virtue of Section 15.2 of the franchise

agreements it enters into with franchisees, defendants were certainly on notice that

such information would not be provided.  Therefore, the Court finds defendants were on

notice of their own obligation to conduct appropriate due diligence by inquiring with

individual franchisees regarding operating expenses at a like franchise to the one

defendants intended to open.  The Court further concludes that defendants' purported

reliance on Note 5 to Item 19 is not credible in light of the many more obvious and

prominent concerns they faced, such as their lease agreement, the foot traffic in the

Gaslamp district, and product costs, which did not deter them from signing the Franchise Agreement.

## 2. *California Statutory Claims*

Defendants seek damages and rescission of the Franchise Agreement pursuant to California statutory law, alleging that RMCF violated Cal. Corp. Code §§ 31300 and 31200 (First Counterclaim) and §§ 31301 and 31201 (Second Counterclaim). Sections 31300 and 31200 of the California Franchise Investment Law ("CFIL") prohibit a franchisor from willfully making an "untrue statement of a material fact" or willfully omitting "to state a material fact necessary to make . . . statements not misleading" in any document filed with the California Commissioner of Corporations, such as a franchisor's proposed UFOC (now referred to as Franchise Disclosure Document).

Section 31200 provides:

> It is unlawful for any person willfully to make any untrue statement of a material fact in any application, notice or report filed with the commissioner under this law, or willfully to omit to state in any such application, notice, or report any material fact which is required to be stated therein, or fail to notify the commissioner of any material change as required by Section 31123.

Cal. Corp. Code § 31200 (2007).

Section 31300 states:

> Any person who offers or sells a franchise in violation of Section 31101, 31110, 31119, 31200, or 31202, or in violation of any provision of this division that provides an exemption from the provisions of Chapter 2 (commencing with Section 31110) of Part 2 or any portions of Part 2, shall be liable to the franchisee or subfranchisor, who may sue for damages caused thereby, and if the violation is willful, the franchisee may also sue for rescission, unless, in the case of violation of Section 31200 or 31202, the defendant proves that the plaintiff knew the facts concerning the untruth or omission, or that the defendant exercised reasonable care and

did not know, or, if he or she had exercised reasonable care, would not have known, of the untruth or omission.

*Id.* § 31300. Similarly, Cal. Corp. Code §§ 31301 and 31201 of the CFIL create liability for willfully making an "untrue statement of a material fact" or willfully omitting "to state a material fact necessary to make . . . statements not misleading" in statements other than a UFOC made in the context of offering or selling a franchise in California.

To prove their CFIL claims, defendants need to establish essentially the same elements as those required for their common law fraud claims, including a material false statement and, in particular, that defendants reasonably relied on the false statement. *See Lee v. General Nutrition Cos., Inc.*, No. CV 00-13550, 2001 WL 34032651, *6 (C.D. Cal. Nov. 26, 2001) ("Defendants correctly assert that California Corporations Code sections 31300 and 31302 require reasonable reliance as a prerequisite for liability for statements made in a UFOC."); *California Bagel Co., LLC v. American Bagel Co.*, No. CV 97-8863, 2000 U.S. Dist. LEXIS 22898, *5 (C.D. Cal. June 2, 2000) ("California Corporations Code §§ 31200 and 31201 incorporate the reasonable reliance requirement of the common law.").

The same rationale underlying the Court's conclusion that defendants failed to establish their reasonable reliance on the statement contained in Note 5 to Item 19 of the UFOC necessarily causes defendants' California statutory claims to fail.

With respect to the affirmative defenses preserved by defendants in the Revised Final Pretrial Order [Docket No. 205 at 14], the Court finds that defendants did not carry their burden on these defenses at trial. Defendants abandoned their affirmative defense of failure of consideration by failing to adduce evidence that RMCF's business

model had no value.  Moreover, evidence presented by both parties at trial indicated that a number of RMCF franchisees are, in fact, quite successful, which precludes this defense.  Defendants' counsel indicated during closing argument that defendants' unclean hands defense is premised on RMCF's statement in Note 5 to Item 19 that it has no access to expenses or costs incurred by each of the 169 franchised stores referenced in Item 19.  "The doctrine of unclean hands enables a defendant to raise an equitable defense to defeat equitable remedies, but not remedies at law." *Wilson v. Prentiss*, 140 P.3d 288, 293 (Colo. App. 2006).  Defendants' invocation of unclean hands is therefore not a cognizable defense to RMCF's sole remaining claim for damages stemming from breach of contract, which is a legal rather than equitable claim.  Even so, under the facts of this case, the Court cannot conclude that the statement in Note 5 to Item 19, even if false, equitably precludes RMCF from recovering damages for defendants' breach of the Franchise Agreement.

Finally, to the extent that any claim, affirmative defense, defense, objection, or argument is not specifically addressed in this opinion or in any other relevant order, I have considered, but rejected it.

## III.  CONCLUSION

Therefore, it is **ORDERED** as follows:

1.  Judgment shall enter in the favor of plaintiff Rocky Mountain Chocolate Factory, Inc. and against defendants SDMS, Inc., Thomas P. Anderson, and Kenneth Pecus as to plaintiff's Third Claim for breach of contract.

2.  Judgment shall enter against defendants SDMS, Inc., Thomas P. Anderson, and Kenneth Pecus and in favor of plaintiff Rocky Mountain Chocolate Factory, Inc. on defendants' First, Second, Fourth, and Sixth Counterclaims.

3.  Plaintiff Rocky Mountain Chocolate Factory, Inc. is awarded actual damages in the amount of $33,109.

4.  Plaintiff Rocky Mountain Chocolate Factory, Inc. is entitled to its non-taxable costs and reasonable attorney's fees, as determined by the Court, incurred because of this case.  *See* D.C.COLO.LCivR 54.3 and Fed. R. Civ. P. 54(d)(2).

5.  Plaintiff Rocky Mountain Chocolate Factory, Inc. is awarded its costs.  *See* D.C.COLO.LCivR 54.1 and Fed. R. Civ. P. 54(d)(1).

DATED March 4, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge